

**U.S. Department of Justice**

*Nathaniel R. Mendell*
*Acting United States Attorney*
*District of Massachusetts*

*Main Reception: (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

November 8, 2021

Paul J. Garrity
14 Londonderry Road
Londonderry, NH 03053
garritylaw@myfairpoint.net

> Re:   United States v. Donna Wasson
>        Criminal No. 1:21-cr-10167-FDS

Dear Mr. Garrity:

The United States Attorney for the District of Massachusetts ("the U.S. Attorney") and your client, Donna Wasson ("Defendant"), agree as follows, pursuant to Federal Rule of Criminal Procedure ("Rule") 11(c)(1)(C):

1.    Change of Plea

Defendant will plead guilty to counts One through Three of the Indictment: wire fraud, in violation of 18 U.S.C. § 1343. Defendant admits that Defendant committed the crimes specified in these counts and is in fact guilty of each one.

The U.S. Attorney agrees to dismiss Count Four of the Indictment following the imposition of sentence at the sentencing hearing.

Defendant agrees to the accuracy of the attached statement of facts.

2.    Penalties

Defendant faces the following maximum penalties: incarceration for 20 years; supervised release for 3 years; a fine of $250,000; a mandatory special assessment of $300 ($100 per count); restitution; and forfeiture to the extent charged in the Indictment.

Defendant understands that, if Defendant is not a United States citizen by birth, pleading guilty may affect Defendant's immigration status. Defendant agrees to plead guilty regardless of

1

any potential immigration consequences, even if Defendant's plea results in being automatically removed from the United States.

### 3. Rule 11(c)(1)(C) Plea

In accordance with Rule 11(c)(1)(C), if the Court accepts this Plea Agreement, the Court must include the agreed disposition in the judgment. If the Court rejects any part of this Plea Agreement, the U.S. Attorney may void the agreement and/or Defendant may withdraw from it. Defendant may not withdraw Defendant's plea for any other reason.

Should the U.S. Attorney void the agreement and/or Defendant moves to withdraw Defendant's guilty plea, Defendant agrees to waive any defenses based upon statute of limitations, the constitutional protection against pre-indictment delay, and the Speedy Trial Act for all charges that could have been brought as of the date of this Plea Agreement.

### 4. Sentencing Guidelines

The parties agree, based on the following calculations, that Defendant's total "offense level" under the Guidelines is 11:

> a) Defendant's base offense level is 7, because the maximum term of imprisonment is 20 years (USSG § 2B1.1(a)(1));
>
> b) Defendant's offense level is increased by 6, because the loss amount exceeded $40,000 but did not exceed $95,000 (USSG § 2B1.1(b)(1)(D)); and
>
> c) Defendant's offense level is decreased by 2, because Defendant has accepted responsibility for Defendant's crimes (USSG § 3E1.1).

Defendant understands that the Court is not required to follow this calculation. Defendant also understands that the government will object to any reduction in Defendant sentence based on acceptance of responsibility, and may be released from the parties' agreed-upon disposition in Paragraph 5 if: (a) at sentencing, Defendant (directly or through counsel) indicates that Defendant does not fully accept responsibility for having engaged in the conduct underlying each of the elements of the crime(s) to which Defendant is pleading guilty; or (b) by the time of sentencing, Defendant has committed a new federal or state offense, or has in any way obstructed justice.

Nothing in this Plea Agreement affects the U.S. Attorney's obligation to provide the Court and the U.S. Probation Office with accurate and complete information regarding this case.

### 5. Agreed Disposition

The parties agree on the following sentence:

> a) incarceration for 18 months;

2

    b) a fine within the Guidelines sentencing range as calculated by the parties in Paragraph 4, unless the Court finds that Defendant is not able, and is not likely to become able, to pay a fine;

    c) 24 months of supervised release;

    d) a mandatory special assessment of $300, which Defendant must pay to the Clerk of the Court by the date of sentencing;

    e) restitution of $5,437; and

    f) forfeiture as set forth in Paragraph 7.

6.    <u>Waiver of Appellate Rights and Challenges to Conviction or Sentence</u>

Defendant has the right to challenge her conviction and sentence on "direct appeal." This means that Defendant has the right to ask a higher court (the "appeals court") to look at what happened in this case and, if the appeals court finds that the trial court or the parties made certain mistakes, overturn Defendant's conviction or sentence. Also, in some instances, Defendant has the right to file a separate civil lawsuit claiming that serious mistakes were made in this case and that her conviction or sentence should be overturned.

Defendant understands that Defendant has these rights, but now agrees to give them up. Specifically, Defendant agrees that:

    a) Defendant will not challenge Defendant's <u>conviction</u> on direct appeal or in any other proceeding, including in a separate civil lawsuit; and

    b) Defendant will not challenge Defendant's <u>sentence,</u> including any court orders related to forfeiture, restitution, fines or supervised release, on direct appeal or in any other proceeding, including in a separate civil lawsuit.

The U.S. Attorney agrees not to appeal the imposition of the sentence agreed to by the parties in paragraph 5.

Defendant understands that, by agreeing to the above, Defendant is agreeing that her conviction and sentence will be final when the Court issues a written judgment after the sentencing hearing in this case. <u>That is, after the Court issues a written judgment, Defendant will lose the right to appeal or otherwise challenge Defendant's conviction and sentence regardless of whether Defendant later changes his mind or finds new information that would have led Defendant not to agree to give up these rights in the first place.</u>

Defendant acknowledges that Defendant is agreeing to give up these rights in exchange for concessions the U.S. Attorney is making in this Agreement.

3

The parties agree that, despite giving up these rights, Defendant keeps the right to later claim that Defendant's lawyer rendered ineffective assistance of counsel, or that the prosecutor or a member of law enforcement involved in the case engaged in misconduct serious enough to entitle Defendant to have her conviction or sentence overturned.

7.    Forfeiture

Defendant understands that the Court will, upon acceptance of Defendant's guilty plea, enter an order of forfeiture as part of Defendant's sentence, and that the order of forfeiture may include assets directly traceable to Defendant's offense, assets used to facilitate Defendant's offense, substitute assets and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense.

The assets to be forfeited specifically include, without limitation, the following:

> a. $5,437 in United States currency, to be entered in the form of an Order of Forfeiture (Money Judgment).

Defendant admits that these assets are subject to forfeiture on the grounds that they constitute, or are derived from, proceeds of Defendant's offense.

Defendant also admits that $5,437 is subject to forfeiture on the grounds that it is equal to the amount of proceeds the defendant derived from the offense.

Defendant acknowledges and agrees that the amount of the forfeiture money judgment represents proceeds the Defendant obtained (directly or indirectly), and/or facilitating property and/or property involved in, the crimes to which Defendant is pleading guilty and that, due at least in part to the acts or omissions of Defendant, the proceeds or property have been transferred to, or deposited with, a third party, spent, cannot be located upon exercise of due diligence, placed beyond the jurisdiction of the Court, substantially diminished in value, or commingled with other property which cannot be divided without difficulty. Accordingly, Defendant agrees that the United States is entitled to forfeit as "substitute assets" any other assets of Defendant up to the value of the now missing directly forfeitable assets.

Defendant agrees to consent to the entry of an order of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Defendant understands and agrees that forfeiture shall not satisfy or affect any fine, lien, penalty, restitution, cost of imprisonment, tax liability or any other debt owed to the United States.

Defendant agrees to assist fully in the forfeiture of the foregoing assets. Defendant agrees to promptly take all steps necessary to pass clear title to the forfeited assets to the United States, including but not limited to executing any and all documents necessary to transfer such title,

assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture. Defendant further agrees (a) not to assist any third party in asserting a claim to the forfeited assets in an ancillary proceeding, and (b) to testify truthfully in any such proceeding.

If the U.S. Attorney requests, Defendant shall deliver to the U.S. Attorney within 30 days after signing this Plea Agreement a sworn financial statement disclosing all assets in which Defendant currently has any interest and all assets over which Defendant has exercised control, or has had any legal or beneficial interest. Defendant further agrees to be deposed with respect to Defendant's assets at the request of the U.S. Attorney. Defendant agrees that the United States Department of Probation may share any financial information about the Defendant with the United States Attorney's Office.

Defendant also agrees to waive all constitutional, legal, and equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement.

Defendant hereby waives and releases any claims Defendant may have to any vehicles, currency, or other personal property seized by the United States, or seized by any state or local law enforcement agency and turned over to the United States, during the investigation and prosecution of this case, and consents to the forfeiture of all such assets.

8.   Civil Liability

This Plea Agreement does not affect any civil liability, including any tax liability, Defendant has incurred or may later incur due to her criminal conduct and guilty plea to the charges specified in Paragraph 1 of this Agreement.

9.   Breach of Plea Agreement

Defendant understands that if Defendant breaches any provision of this Agreement, violates any condition of Defendant's pre-trial release or commits any crime following Defendant's execution of this Plea Agreement, Defendant cannot rely upon such conduct to withdraw Defendant's guilty plea. Defendant's conduct, however, would give the U.S. Attorney the right to be released from his commitments under this Agreement, to pursue any charges that were, or are to be, dismissed under this Agreement, and to use against Defendant any of Defendant's statements, and any information or materials she provided to the government during investigation or prosecution of her case—even if the parties had entered any earlier written or oral agreements or understandings about this issue.

Defendant also understands that if Defendant breaches any provision of this Agreement or engages in any of the aforementioned conduct, Defendant thereby waives any defenses based on the statute of limitations, constitutional protections against pre-indictment delay, and the Speedy Trial Act, that Defendant otherwise may have had to any charges based on conduct occurring

5

before the date of this Agreement.

      10.   Who is Bound by Plea Agreement

This Agreement is only between Defendant and the U.S. Attorney for the District of Massachusetts. It does not bind the Attorney General of the United States or any other federal, state, or local prosecuting authorities.

      11.   Modifications to Plea Agreement

This Agreement can be modified or supplemented only in a written memorandum signed by both parties, or through proceedings in open court.

*     *     *

If this letter accurately reflects the agreement between the U.S. Attorney and Defendant, please have Defendant sign the Acknowledgment of Plea Agreement below. Please also sign below as Witness. Return the original of this letter to Assistant U.S. Attorney William F. Abely.

Sincerely,

NATHANIEL R. MENDELL
Acting United States Attorney

By:

Anne Paruti
Chief, Major Crimes Unit

William F. Abely
Assistant U.S. Attorney

6

## ACKNOWLEDGMENT OF PLEA AGREEMENT

I have read this letter and discussed it with my attorney. The letter accurately presents my agreement with the United States Attorney's Office for the District of Massachusetts. There are no unwritten agreements between me and the United States Attorney's Office, and no United States government official has made any unwritten promises or representations to me in connection with my guilty plea. I have received no prior offers to resolve this case.

I understand the crimes I am pleading guilty to, and the maximum penalties for those crimes. I have discussed the Sentencing Guidelines with my lawyer and I understand the sentencing ranges that may apply.

I am satisfied with the legal representation my lawyer has given me and we have had enough time to meet and discuss my case. We have discussed the charges against me, possible defenses I might have, the terms of this Agreement and whether I should go to trial.

I am entering into this Agreement freely and voluntarily and because I am in fact guilty of the offenses. I believe this Agreement is in my best interest.

Donna Wasson
Defendant

Date: 11/5/2021

I certify that Donna Wasson has read this Agreement and that we have discussed what it means. I believe Donna Wasson understands the Agreement and is entering into it freely, voluntarily, and knowingly. I also certify that the U.S. Attorney has not extended any other offers regarding a change of plea in this case.

Paul Garrity
Attorney for Defendant Donna Wasson

Date: 11/5/2021

7

## Statement of Facts

1. At all relevant times, Defendant was a resident of the State of Texas and, as per the terms of her state probation, remained within Texas.

2. Defendant was friends with Tiffany Pacheco.  Up to September 2020, Pacheco was an employee of the Massachusetts Department of Unemployment Assistance ("DUA"). Sometime after September 2020, Pacheco moved to Texas.

3. On or around December 15, 2020, a claim for Pandemic Unemployment Assistance ("PUA") benefits was filed with the DUA in the Defendant's name, and using her Social Security number and other identifiers.  Defendant was not entitled to Massachusetts PUA benefits, as she did not live or work in Massachusetts, and because she was receiving PUA benefits from the Texas Workforce Commission.

4. On December 17, 2020, Pacheco was arrested on federal fraud charges, and she remained in custody after that point.

5. During recorded jail calls after Pacheco's arrest, she and the Defendant discussed the Defendant's Massachusetts PUA claim, and Pacheco advised the Defendant to submit additional information on this claim.

6. A recorded call maintained by DUA reveals that Defendant called DUA on January 13, 2021, identified herself, and inquired about the status of her PUA claim.  During this call, Defendant claimed to live at an address in Massachusetts, although she had not in fact lived at that address.  Phone records show that this call was made from Defendant's cell phone.

7. DUA records reflect that, between January 7 and January 25, 2021, the Defendant's Massachusetts PUA claim was accessed online on 23 occasions.  This access occurred from an IP address tied to Defendant's residence in San Antonio, Texas.

8. Defendant's Massachusetts PUA claim was denied, and she received no payments on this claim.

9. Prior to her arrest in 2020, Pacheco had submitted and/or modified fraudulent PUA claims submitted under certain victim identities, including under the identity of a male serving in the U.S. Armed Forces ("Victim 1") and a female residing in Massachusetts ("Victim 2").

10. During recorded jail calls, Pacheco instructed Defendant to access information on a Google Drive account relating to Victim 1 and Victim 2.  Pacheco also instructed Defendant to access the PUA claims for Victim 1 and Victim 2, and to make changes associated with these claims.

11. DUA records reflect that, between January 12 and January 25, 2021, the PUA claim in the name of Victim 1 was accessed online on at least 27 occasions.  This access occurred from

8

the IP address tied to Defendant's residence.

12. DUA records reflect that, between January 12 and January 25, 2021, the PUA claim in the name of Victim 2 was accessed online on at least 32 occasions. This access occurred from the IP address tied to Defendant's residence. On or about January 15, 2021, this PUA claim was accessed online and the web logon was changed to "KM Wasson."

13. A recorded call maintained by DUA reveals that Defendant called DUA on or about January 15, 2021 and identified herself as Victim 2. Defendant discussed obtaining back pay for the weeks ending February 8, 2020 through April 25, 2020. Phone records show that this call was made from Defendant's cell phone.

14. After her federal arrest in April 2021, Defendant spoke with agents and acknowledged making changes to the PUA claims for Victim 1 and Victim 2.